UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JOHN ROBERT GRAHAM,<br><br>                    Movant,<br><br>    vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | 4:20-CV-04091-KES<br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This matter is before the court on the motion of John Robert Graham to vacate, set aside or modify his sentence pursuant to 28 U.S.C. § 2255.  See Docket No. 1.[1]  Respondent United States of America ("government") now moves to dismiss Mr. Graham's motion without holding an evidentiary hearing. See Docket No. 10.  Mr. Graham resists the government's motion.  See Docket No. 16.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge.

---

[1] In this opinion, the court refers to documents filed in Mr. Graham's civil § 2255 action by their docket numbers in the court's docket.  The court refers to documents filed in Mr. Graham's underlying criminal case, United States v. Graham, 4:12-cr-40016 (D.S.D.) by their docket number in that case preceded by the designation "CR."

## FACTS

On January 18, 2012, Mr. Graham was indicted and charged with: count one—burglary involving controlled substances, in violation of 18 U.S.C. § 2118(b)(2) and (c)(1); count two—possession of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c); and count three—burglary involving controlled substances, in violation of 18 U.S.C. § 2118 (b)(2).  See CR Docket No. 1.  Counts one and two were alleged to have occurred in Lennox, South Dakota, on December 23, 2011, and count three was alleged to have occurred in Dell Rapids, South Dakota, on November 20, 2011.  Id.  The associated "crime of violence" alleged in the indictment in support of count two, the firearm count, was the commission of the federal crime of burglary involving controlled substances as alleged in count one.  Id.

On August 14, 2012, the parties filed a plea agreement whereby Mr. Graham agreed to plead guilty to counts one and two in the indictment and the government agreed to dismiss count three.  See CR Docket No. 19 at p. 2, ¶ C.[2]  The burglary crime contained in count one carried a maximum term of imprisonment of 25 years.  Id.  The firearms offense charged in count two carried a mandatory minimum sentence of imprisonment of 10 years and a maximum term of imprisonment of up to life.  Id.  The sentence imposed for count two was required to be served consecutive to whatever sentence was imposed for count one.  Id.

---

[2] An amended plea agreement was filed two days later, but the amendment did not change the terms recited in the body of this opinion.  Compare CR Docket No. 24 at p. 2, ¶ C, with CR Docket No. 19 at p. 2, ¶ C.

The plea was supported by a statement of factual basis, which provided in pertinent part as follows:

> On December 23, 2011, at Lennox, South Dakota, defendant John Robert Graham attempted to enter, without permission, a business premises that contained a Lewis Drug Pharmacy, a business registered with the Drug Enforcement Administration. Graham did so by entering a structure that contained multiple businesses and mistakenly entered a neighboring business instead of the Lewis Drug Pharmacy. The intent of the attempted entry was to steal controlled substances. To further his burglary attempt he used various facilities of interstate commerce, including automobiles, the interstate highway system, a cellular telephone, and the internet to locate the pharmacy. In the course of committing the offense and attempting to elude law enforcement, Defendant discharged a firearm into a window to allow his exit through an otherwise locked exit out of the premises.

> Subsequently, he brandished his weapon in the direction of a pursuing law enforcement officer. In his further attempt to escape capture, Graham stole a vehicle parked nearby and led pursuing officers on a high-speed chase resulting in the lives of others being placed in jeopardy.

See CR Docket No. 21.

Mr. Graham was sentenced on November 5, 2012. See CR Docket No. 32. A sentence of imprisonment of 27 months was imposed for count one and the mandatory minimum sentence of 10 years (120 months) was imposed for count two, to run consecutive to the sentence for count one. Id. at p. 2. Thus, Mr. Graham's combined sentence was for 147 months' imprisonment. Id.

No direct appeal was filed. On June 24, 2019, the Supreme Court decided United States v. Davis, ___ U.S. ___, 139 S. Ct. 2319 (2019), on which Mr. Graham bases his § 2255 motion. See Docket No. 1. He argues his conviction on count two should be invalidated under the rule announced in Davis. Mr. Graham filed the instant § 2255 motion on June 15, 2020. Id.

3

Both parties agree that the rule announced in <u>Davis</u> applies retroactively to cases on collateral appeal and that Mr. Graham's motion is timely. Additionally, the parties agree that Mr. Graham's claim is a cognizable one under § 2255 and that it presents a question of law. Accordingly, there are no procedural impediments to consideration of the merits of Mr. Graham's claim.

## DISCUSSION

### A.    Scope and Procedure Applicable to a § 2255 Motion

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners. <u>Davis v. United States</u>, 417 U.S. 333, 343-44 (1974). Section "2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." <u>Id.</u> at 343. Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presented logistical issues because the record in the underlying criminal case was often in a distant location. <u>United States v. Hayman</u>, 342 U.S. 205, 212-16 (1952). The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court. <u>Id.</u>

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension. Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that

4

the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." <u>See</u> 28 U.S.C. § 2255(a) (2018).

Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255—relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962); <u>see</u> <u>Peguero v. United States</u>, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. <u>United States v. Frady</u>, 456 U.S. 152, 167-68 (1982); <u>McNeal v. United States</u>, 249 F.3d 747, 749 (8th Cir. 2001). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. <u>Bousley v. United States</u>, 523 U.S. 614, 621-22 (1998); <u>McNeal</u>, 249 F.3d at 749. Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Where a new rule of constitutional law is announced that is made retroactive to cases on collateral review, however, procedural default does not apply to prevent a movant from raising a claim based on the new rule of law. See 28 U.S.C. § 2255(f)(3) (2018).  That is the situation Mr. Graham finds himself in, as the government agrees.

**B.    Standard Applicable to Rule 12(b)(6) Motions**

The government's motion to dismiss Mr. Graham's § 2255 motion is based on Federal Rule of Civil Procedure 12(b)(6).  See Docket No. 10.[3]  The Federal Rules of Civil Procedure are applicable to § 2255 habeas actions so long as the procedural rules do not conflict with the habeas statutes or the Rules Governing Section 2255 Cases in the United States District Courts ("Governing Rules").  See Governing Rule 12.  Federal Rule of Civil Procedure 12(b)(6) is not inconsistent with the Governing Rules.  Compare Governing Rules 4 & 5 (allowing respondent to respond to petitioner's habeas petition with a motion), with FED. R. CIV. P. 12(b)(6) (same); see also Ebert v. Clarke, 320 F. Supp. 2d 902, 909-10 (D. Neb. 2004) (holding that FED. R. CIV. P. 12(b)(6) applies in habeas proceedings).

Rule 12(b)(6) allows dismissal of a habeas petition if the petitioner has failed to state a claim upon which relief can be granted.  See FED. R. CIV. P. 12(b)(6).  Here, the government does not take issue with Mr. Graham's factual statement of his claim.  Instead, a pure question of law is raised.  Even

---

[3] The government also initially invoked Rule 12(h)(3) but retracted that invocation in its reply brief.  See Docket No. 19 at pp. 11-12.  Accordingly, the court does not discuss Rule 12(h)(3) as a ground for the government's motion.

assuming all the facts alleged by Mr. Graham in his petition are true, is the government entitled to judgment as a matter of law?  Put another way, if all the facts alleged by Mr. Graham are true, has he demonstrated a claim upon which relief may be granted?  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  In analyzing Mr. Graham's petition, the court sets aside conclusory statements and legal conclusions.  Id. at 678-79.

Rule 12(b)(6) requires the court to evaluate the sufficiency of a petitioner's pleading of a claim by examining his or her petition.  See Fed. R. Civ. P. 12(b)(6); Iqbal, 556 U.S. at 679.  But courts evaluating a Rule 12(b)(6) motion are not strictly limited to evaluating the petition alone.  Dittmer Props., L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013).  They may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  Id. (quoting Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1357 (3d ed. 2004))).

## C.     From Johnson to Davis

On June 26, 2015, the Supreme Court decided Johnson v. United States, 576 U.S. 591 (2015).  That decision interpreted the "residual clause" of the Armed Career Criminal Act ("ACCA") and held the clause to be unconstitutionally vague under the Due Process clause of the Fifth Amendment.  Id. at 606.  Later, the Court would hold that its ruling in

7

Johnson was retroactive to cases on collateral review.  Welch v. United States,
___ U.S. ___, 136 S. Ct. 1257, 1268 (2016).

The ACCA provides a mandatory minimum sentence of 15 years'
imprisonment for a defendant who violates 18 U.S.C. § 922(g)[4] and has three
prior convictions for a "violent felony" or a "serious drug offense."  See 18
U.S.C. § 924(e)(1) (2018).  The ACCA defined "violent felony" as an act
punishable by more than one year imprisonment that threatens "use of
physical force against the person of another," "is burglary, arson, or extortion,
involves use of explosives, or otherwise involves conduct that presents a
serious potential risk of physical injury to another."  See 18 U.S.C.
§ 924(e)(2)(B) (2018).  The last part of this definition—"otherwise involves
conduct . . ."—is known as the residual clause.

The Johnson decision held the residual clause of the ACCA was
unconstitutionally vague.  Johnson, 576 U.S. at 597-98.  The Court specifically
noted that its decision did not affect the remainder of the ACCA definition of
"violent felony"—that is, the four enumerated offenses or the remaining parts of
the definition aside from the residual clause.  Id. at 606.

The same or similar wording of the ACCA residual clause is repeated
multiple times in other provisions of law.  Predictably, then, the Johnson

---

[4] Section 922(g) makes it a crime for certain persons to possess a firearm or
ammunition that has been shipped in interstate or foreign commerce.  See 18
U.S.C. § 922(g) (2018).  Some of the persons prohibited from possessing
firearms are those with a previous felony conviction or misdemeanor domestic
violence conviction, an illegal alien, a fugitive, or a person addicted to
controlled substances.  Id.

8

decision has spawned a great deal of litigation involving these other provisions of law.

In the immigration context, the Court held the federal criminal code's definition of "crime of violence," which was incorporated by reference into certain immigration statutes and included the same language as the ACCA residual clause language was also void for vagueness. <u>Sessions v. Dimaya</u>, ___ U.S. ___, 138 S. Ct. 1204, 1210 (2018).

However, the Court held that the same language found in the United States Sentencing Guidelines ("USSG") (in the residual clause found in USSG § 4B1.2(a)(2), to which the commentary to USSG § 2K2.1, cmt. 1 refers), was not rendered void by the holding of <u>Johnson</u>. <u>Beckles v. United States</u>, ___ U.S. ___, 137 S. Ct. 886, 890 (2017). The Court held that the Due Process void-for-vagueness analysis only applies to laws that define crimes and that "fix" sentences. <u>Id.</u> at 892. Because the USSG are advisory only, the Court held they do not "fix" sentences. <u>Id.</u> Rather, they simply guide a district court's discretion in determining sentences. Therefore, no void-for-vagueness analysis is applicable to the USSG. <u>Id.</u> at 892-95. For this reason, <u>Johnson</u> did not render the USSG provisions using the same exact language unconstitutional. <u>Id.</u> at 895.

In <u>United States v. Davis</u>, ___ U.S. ___, 139 S. Ct. 2319, 2323 (2019), two defendants were convicted of several federal crimes after a series of gas station robberies. One of the crimes they stood convicted of was 18 U.S.C. § 924(c)(1)(A): using, carrying or possessing a firearm "in furtherance of" any

"crime of violence."  Id. at 2324 (quoting § 924(c)(1)(A)).  The statute contains its own definition of "crime of violence" in two subparts, the first known as the "elements" clause and the second known as the "residual" clause.  Id.  The language of the § 924(c) residual clause was identical to the language construed in Johnson.  Id.

As the Davis Court explained, a conviction under § 924(c) carries with it a mandatory minimum sentence of 5 years' imprisonment, consecutive to the sentence imposed for the "crime of violence" on which the § 924(c) conviction is based.  Id.  That mandatory minimum sentence goes up to 7 years if the defendant brandished the firearm and 10 years if the defendant discharged the firearm.  Id.  The Court held that the residual clause definition of "crime of violence" under § 924(c) was void for vagueness for the same reason the same language was held invalid in Johnson.  Id. at 2336.

## B.    Applying Davis to Mr. Graham's Case

The conviction and sentence attacked by Mr. Graham in his § 2255 motion is his conviction under 18 U.S.C. § 924(c)(1)(A) for which he received a mandatory minimum consecutive sentence of 10 years.  Section 924(c) states in pertinent part as follows:

> (1)    (A) . . . any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . .
>
>           * * *

10

> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.
>
> * * *
>
> (D)    (ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence . . . during which the firearm was used, carried, or possessed.
>
> * * *
>
> (3)  For purposes of this subsection [subsection 924(c)] the term "crime of violence" means an offense that is a felony and—
>
>> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>>
>> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

See 18 U.S.C. § 924(c)(1)(A)(ii) and (iii), (D)(ii), and (3)(A) and (B) (2018).

Subparagraph (c)(3)(A) immediately above is the "elements" definition of "crime of violence," also sometimes called the "force" clause.  Subparagraph (c)(3)(B), also immediately above, is the "residual" definition of "crime of violence."  If Mr. Graham's § 924(c)(1)(A) conviction rests on the elements clause of § 924(c)(3)(A), the validity of his conviction is not called into question by Davis. If his conviction rests on the residual clause of § 924(c)(3)(B), Davis would require that conviction be vacated.

The court observes that the crime Mr. Graham pleaded guilty to must have been a violation of § 924(c)(1)(A)(iii).  This is because Mr. Graham's plea agreement recited that the crime to which he was pleading guilty carried with it a mandatory minimum sentence of 10 years' imprisonment.  See CR Docket No. 19 at p. 2, ¶ C.  The presentence investigative report ("PSR") also recites the same mandatory minimum penalty.  See PSR at p. 1, p. 16 at ¶ 83.  The only instance in which that penalty would be applicable is if Mr. Graham discharged a firearm in connection with the burglary.  18 U.S.C. § 924(c)(1)(A)(iii) (2018).  Therefore, the court takes it as a given that Mr. Graham pleaded guilty to this provision.

The predicate crime upon which Mr. Graham's § 924(c)(1)(A) conviction depends is count one of the indictment—burglary involving a controlled substance under 18 U.S.C. § 2118.  The government cited two provisions of § 2118 in Mr. Graham's indictment on count one—subsections (b)(2) and (c)(1).  Those provisions read in pertinent part as follows:

> (b) Whoever, without authority, enters or attempts to enter, or remains in, the business premises or property of a person registered with the Drug Enforcement Administration ["DEA"] . . . with the intent to steal any . . . controlled substance shall . . . be . . . imprisoned not more than twenty years . . . if . . . (2) the person who engaged in such entry or attempted entry or who remained in such premises or property traveled in interstate or foreign commerce or used any facility in interstate or foreign commerce to facilitate such entry or attempt or to facilitate remaining in such premises or property . . . .

> (c)(1) Whoever in committing any offense under subsection (a) or (b) assaults any person, or puts in jeopardy the life of any person, by the use of a dangerous weapon or device shall be fined under this title and imprisoned for not more than twenty-five years.

See 18 U.S.C. § 2118(b)(2) and (c)(1) (2018).  Thus, if one merely burgles or attempts to burgle a property registered with the DEA, the maximum term of imprisonment is 20 years.  Id. at (b)(2).  But if one assaults someone or puts in jeopardy the life of any person by using a dangerous weapon or device while committing the burglary, the penalty increases to a maximum of 25 years' imprisonment.  Id. at (c)(1).

Here, Mr. Graham pleaded guilty, he did not avail himself of a jury or other trial.  His plea agreement, signed by all parties, indicated a maximum term of imprisonment on the burglary count of 25 years' imprisonment.  See CR Docket No. 19 at p. 2, ¶ C.  Therefore, it is evident that, although the indictment references both subsections (b)(2) and (c)(1) of § 2118, and although the factual basis supports a conviction under both subparts, Mr. Graham pleaded guilty at least to a violation of subsection (c)(1).  Id.  Mr. Graham's presentence investigation report ("PSR") is in accord that the maximum term of imprisonment for count one was 25 years' imprisonment.  See PSR at p. 1, p. 16 at ¶ 83.  This would only be true if Mr. Graham's conviction was for a violation of at least 18 U.S.C. § 2118(c)(1).

This supposition is borne out by the factual basis statement filed in support of the plea agreement.  That document recites that, during the commission of the burglary alleged in count one, Mr. Graham both discharged his firearm and brandished his firearm.  See CR Docket No. 21.  These allegations would be unnecessary to establish a factual basis for a violation

under § 2118(b)(2).  They would be necessary to support a violation of § 2118(c)(1), however.

The question under <u>Davis</u> then, in Mr. Graham's case, is whether a conviction under § 2118(c)(1) constitutes a "crime of violence" under the *elements* clause of § 924(c)(3)(A), in which case his conviction is not implicated by <u>Davis</u>, or whether his conviction is a "crime of violence" only under the *residual* clause of § 924(c)(3)(B), in which case <u>Davis</u> is squarely implicated.  That question in turn is answered by determining whether the elements of the crime of burglary involving a controlled substance under § 2118(c)(1) require proof that Mr. Graham used, attempted to use, or threatened the use of physical force against the person or property of another.  <u>See</u> 18 U.S.C. § 924(c)(3)(A) (2018). Because it is clear that Mr. Graham's § 924(c) conviction rests at least in part on a violation of § 2118(c)(1), the court does not address whether a violation of § 2118(b)(2) standing alone would be a sufficient predicate crime to support a prosecution under the elements clause of § 924(c)(3)(A).

Importantly, the question whether a violation of § 2118(c)(1) can satisfy the elements clause of § 924(c)(3)(A) is answered in the abstract— or "categorically."  <u>Davis</u> 139 S. Ct. at 2326-32 (explaining in detail why the categorical approach, not a case-specific approach, must be applied to determine the meaning of "crime of violence" under § 924(c)).  In other words, the proper inquiry is whether *every* conviction under § 2118(c)(1)

requires the government to prove as an element that the defendant used, attempted to use, or threatened to use physical force against the person or property of another.  Id.  See also United States v. Ross, 969 F.3d 829, 837 (8th Cir. 2020).  The question is not whether Mr. Graham in fact did so under the facts of his conviction.  Id.  Under the facts of Mr. Graham's conviction, he clearly did use force by discharging his firearm while the police officer was on the other side of the glass bank door and by pointing his gun at the policeman later while the policeman was pursuing him.  See PSR at p. 5, ¶¶ 12-13.

The government argues this court should apply a "modified categorical approach" to determine whether a violation of § 2118(c)(1) requires use of force.  Applying the modified categorical approach would allow the court to look to certain limited facts of Mr. Graham's underlying criminal case.  Mathis v. United States, ___ U.S. ___, 136 S. Ct. 2243, 2248-50 (2016).  To justify application of the modified categorical approach, § 2118(c)(1) must set forth alternative elements to separate crimes and not just different means to commit one crime.  A statute setting forth several separate crimes is "divisible" and allows the courts to "peek" at a defendant's underlying documents to see which crime he committed.  Id.  A statute that sets forth a single crime but states alternative means of committing that one crime requires courts to examine the statute in the abstract without reference to the facts of the defendant's case.  Id.

15

In service of its modified categorical approach argument, the government asserts that § 2118(c)(1) describes two separate crimes. The language, repeated here for reference, is "assaults any person, or puts in jeopardy the life of any person, by the use of a dangerous weapon." The government argues this language creates two separate crimes: one is committed by assaulting any person, the second is committed by putting in jeopardy the life of any person by the use of a dangerous weapon. In the government's view, the clause "by the use of a dangerous weapon" modifies only the immediately preceding phrase "putting in jeopardy the life of any person" and does not modify the earlier phrase "committed by assaulting any person." The court disagrees.

The government cites no case interpreting § 2118(c)(1) this way. The court finds the most natural reading of the statute is to interpret the clause "by the use of a dangerous weapon" as modifying *both* preceding phrases. In other words, the crime described under § 2118(c)(1) can be committed by assaulting any person *by the use of a dangerous weapon* or by putting any person's life in jeopardy *by the use of a dangerous weapon.* Thus read, § 2118(c)(1) clearly describes different means of committing *one* crime. It does *not* describe two separate crimes in the alternative.

Prosecutions under § 2118(c)(1) appear to be relatively rare and, hence, there is an absence of case law interpreting it. However, violations of the federal bank robbery statute are much more common

16

and there is definitive case law.  As with the controlled substance burglary statute, bank robbery in its simplest form is described in 18 U.S.C. § 2113(a).  Also, in similar fashion, an enhanced penalty is described in subparagraph (d) in language identical to that found in § 2118(c)(1).  <u>See</u> 18 U.S.C. § 2113(d) (2018).  The bank robbery enhancement reads in pertinent part:  "Whoever in committing, or attempting to commit [bank robbery] assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device" shall receive an increased penalty.  <u>Id.</u>  The Supreme Court and the Eighth Circuit have both interpreted this bank robbery provision to require the use of a dangerous weapon *both* as to the assault clause and as to the puts-in-jeopardy clause.  <u>See</u> <u>Simpson v. United States</u>, 435 U.S. 6, 11 n.6 (1978), <u>overruled on other grounds by statute as recognized in</u> <u>United States v. Gonzales</u>, 520 U.S. 1, 10 (1997); <u>United States v. Cobb</u>, 558 F.2d 486, 489 (8th Cir. 1977) (holding that proof of use of a dangerous weapon was the crucial element upon which a conviction under § 2113(d) must be bottomed).

This interpretation is supported by the meaning of the word "assault."  One of the meanings of the term "assault," a definition clearly indicated in the statute, is to point a firearm at another person.  Thus, § 2118(c)(1) is violated if a defendant, using a dangerous weapon or device, assaults another person (by pointing the weapon or device at them) or otherwise puts any person's life in jeopardy by using a

17

dangerous weapon or device.  Thus, the statute delineates one crime
(using a dangerous weapon or device in committing a controlled
substance burglary), but two means of committing the crime:  one, by
assaulting a person with the dangerous weapon or device or, two, by
otherwise putting a person's life in jeopardy with that dangerous weapon
or device.

The court rejects the government's invitation to apply a modified
categorical approach and applies instead the categorical approach.  This
is, in fact, what the Davis Court instructed lower courts to do when
applying a Johnson analysis to § 924(c).  Davis, 139 S. Ct. at 2326-32.
See also Mathis, 136 S. Ct. at 2248-50 (categorical approach applies
where a statute defines one crime with multiple alternative means of
committing that crime).

Because the court has concluded that Mr. Graham's conviction rests on
a violation of at least § 2118(c)(1), and that such a conviction *must* include
proof that a defendant used a dangerous weapon or device, the question
becomes, under § 924(c)(3)(A), does the use of a dangerous weapon or device in
the commission of a burglary (i.e., as an element of the crime) constitute a
crime which has as an element "the use, attempted use, or threatened use of
physical force against the person or property of another"?

The Eighth Circuit, post-Davis, found that a conviction for robbery
involving controlled substances under § 2118(a) constitutes a "crime of
violence" under the elements clause of § 924(c)(3)(A).  Kidd v. United States,

18

929 F.3d 578, 581 (8th Cir. 2019). Because a conviction under subsection (a) of § 2118 does *not* require use of a dangerous weapon, and conviction under subsection (c)(1) *does* require the use of a dangerous weapon, it seems a solid prediction that the Eighth Circuit, if presented with the question, would also find the crime of aggravated burglary involving controlled substances also satisfies force requirement of the elements clause of § 924(c)(3)(A).

A district court from the Northern District of Alabama has interpreted § 2118(c)(1) in light of <u>Davis</u> and concluded that aggravated burglary involving controlled substances is a "crime of violence" under the elements clause of § 924(c)(3)(A). <u>Love v. United States</u>, No. 5:17-CV-08008-RDP, 2020 WL 1235546, at *2-3 (N.D. Ala. Mar. 9, 2020). The <u>Love</u> court concluded that assaulting someone or putting them in jeopardy with a dangerous weapon or device necessarily involves the use, attempted use, or threatened use of force. <u>Id.</u>

The Fifth Circuit found, post-<u>Davis</u>, that a conviction under the aggravated bank robbery statute, § 2113(d), which contains language identical to § 2118(c)(1), constitutes a "crime of violence" under the elements clause of § 924(c)(3)(A). <u>United States v. Smith</u>, 957 F.3d 590, 593-94 (5th Cir. 2020). <u>See also</u> <u>Stamps v. United States</u>, 812 F. App'x 871, 873 (9th Cir. May 1, 2020) (conviction for aggravated bank robbery under § 2113(d) constitutes a "crime of violence" under the elements clause of § 924(c)(3)(A)). <u>Cf.</u> <u>United States v. Bryant</u>, 949 F.3d 168, 178-80 (4th Cir. 2020) (interpreting an aggravated mail

robbery statute with similar wording to § 2118(c)(1) to constitute a "crime of violence" under the elements clause of § 924(c)(3)(A).

Based on the above authority, this court concludes that the elements of a violation of aggravated burglary involving controlled substances under § 2118(c)(1) satisfies the definition of "crime of violence" under the elements clause of § 924(c)(3)(A). Section 2118(c)(1) requires proof that a defendant used a dangerous weapon or device to either assault a person or to put their life in jeopardy. The court agrees with the Love court that this element of proof necessarily involves the use, attempted use, or threatened use of force.

The parties discuss in their briefs whether Mr. Graham's recklessly leading police on a high-speed chase is sufficient to satisfy the requirement of § 2118(c)(1). As discussed, § 2118(c)(1) requires proof that the defendant used a dangerous weapon or device. Two cases are cited in support of the proposition that a motor vehicle is a dangerous weapon.

In United States v. Mills, 1 F.3d 414, 419-21 (6th Cir. 1993), the court held the defendant's immediate flight from the scene of the burglary was part of the offense under § 2118(b)(2) because he crossed state lines in his flight, a fact not occurring in Mr. Graham's case. The court also held that the defendant's *collision* with a police officer's vehicle met the "put in jeopardy" element of § 2118(c)(1) because the defendant "knowingly [did] an act which expose[d] [a] person to a risk of death." Id.

20

The court agrees when a defendant knowingly uses an automobile in a way that poses a risk of death—as in colliding with a policeman's car—that this can satisfy the element of using a dangerous weapon or device to put a person's life in jeopardy.  The definition of the *mens rea* requirement contained in the <u>Mills</u> opinion clearly satisfies the use of force requirement of § 924(c).

The other case cited is <u>United States v. Yates</u>, 304 F.3d 818 (8th Cir. 2002).  That case involved a prosecution for assault of a federal officer and involved a defendant using his motor vehicle to attempt to ram the vehicle driven by United States Marshals.  <u>Id.</u> at 819.  There is little question that a defendant's use of a motor vehicle in this way constitutes an attempted use of force within the meaning of § 924(c).

Mr. Graham, relying on <u>United States v. Schneider</u>, 905 F.3d 1088 (8th Cir. 2018), argues that § 2118(c)(1) is overbroad because it can be satisfied by mere reckless driving.  But a more recent Eighth Circuit case clarifies that, although recklessness is a sufficient *mens rea* for § 924(c), "unadorned reckless driving causing injury" is *not* sufficient.  <u>Ross</u>, 969 F.3d at 839.  In the <u>Ross</u> case, the crime of violence at issue was kidnapping resulting in death, so it was not "unadorned reckless driving" and the court held the <u>Schneider</u> rule had no application.  <u>Id.</u>  Similarly here, the crime of violence under contemplation is not "unadorned reckless driving," but rather reckless driving in connection with a

controlled substances burglary.  The court concludes the Schneider rule
has been limited by the Eighth Circuit so that it is inapplicable here.

In conclusion, the court agrees that a prosecution under
§ 2118(c)(1) could be premised on the use of an automobile as a
dangerous weapon or device.  However, the court finds the *mens rea*
required for such a prosecution would require the government to show
that the defendant  "knowingly [did] an act which expose[d] [a] person to
a risk of death."  Mills, 1 F.3d at 420.  Doing so satisfies the elements
clause of § 924(c)(3)(A).  Id.

Mr. Graham also argues that § 2118(c)(1) is broader than the
elements clause of § 924(c)(3)(A) because the former requires proof of
endangerment of "any person," which could include the defendant
himself, while § 924(c) requires use of force against "another person," i.e.,
not the defendant.  Thus, Mr. Graham argues § 2118(c)(1) is overbroad
because he could be prosecuted for endangering himself under that
statute while § 924(c) is applicable only if some third party is
endangered.

First, the court notes that Mr. Graham has not cited to any case
anywhere involving a prosecution of a defendant under the controlled
substances burglary statute—or the bank robbery statute containing the
same language—where the only body who was endangered by the
defendants' actions was the defendant himself.  Mr. Graham's citation to
Portee v. United States, 941 F.3d 263 (7th Cir. 2019), is inapposite.  That

case examined a state statute which is dissimilar to § 2118(c)(1).  Id. at

265.  The court examined a number of hypothetical prosecutions under

the statute, but not one of those hypotheticals involved the defendant

potentially endangering only himself.  Id. at 267-68.

In attempting to demonstrate that § 2118(c)(1) is broader than

§ 924(c)(3)(A), Mr. Graham is required to show a realistic probability that

the government would prosecute conduct suggested in a hypothetical.

Mowlana v. Lynch, 803 F.3d 923, 925 (8th Cir. 2015).  Fanciful

hypotheticals or theoretical possibilities will not suffice to demonstrate

under the categorical approach that a statute is overbroad.  Id.  Here, the

court finds Mr. Graham's suggestion that § 2118(c)(1) could be satisfied if

only he were endangered is too fanciful and theoretical to bear the

burden of demonstrating overbreadth under the categorical approach.  A

natural reading of the controlled substances burglary statute, like the

natural reading of the kidnapping resulting in death statute in Ross,

leads to the conclusion that the peril of bodily injury required by

§ 2118(c)(1) must have a causal nexus with the burglary itself.  Ross, 969

F.3d at 838.  If the defendant committed a burglary of a pharmacy and

only endangered his own life, he would have to be prosecuted if at all

under § 2118(b)(2), not under § 2118(c)(1).

The court backs away from the trees here and reminds the reader of the

forest.  Mr. Graham's claim rests on an assertion that § 924(c) is

unconstitutional, not that § 2118 is unconstitutional.  One examines § 2118 as

the predicate crime only to find if there is any set of facts under which a defendant could be prosecuted that would *not* involve use of force.

But Mr. Graham's prosecution under § 924(c) requires a showing that he used, possessed or carried a *firearm* in connection with the violation of § 2118(c)(1). Therefore, as a matter of course, every prosecution of any defendant under § 924(c) for using a firearm in connection with a controlled substance burglary under § 2118(c)(1) *will involve the use of a firearm.* In addition, the mere presence of a firearm is insufficient to support a violation of § 924(c); instead, the government is required to prove that there is a nexus between the firearm and the burglary involving controlled substances. United States v. Close, 518 F.3d 617, 619 (8th Cir. 2008) (prosecution under § 924(c)(1)(A) requires a showing of a nexus between the firearm and the predicate crime).

Even ignoring the facts of Mr. Graham's case, even applying a categorical lens to both § 924(c) and § 2118(c)(1), every such prosecution of every such defendant will necessarily involve a firearm that has some nexus to the burglary. The court has little trouble reaching the conclusion that the use of a firearm that constitutes an assault or that otherwise jeopardizes someone's life during a controlled substances burglary constitutes the use, threatened use, or attempted use of force.

In this way, prosecutions under § 924(c) differ from prosecutions under the ACCA. Under the ACCA, the predicate crimes being analyzed under the categorical approach almost never arise out of the same facts, transaction or

24

occurrence as the ACCA prosecution.  Under § 924(c), the prosecution for

violation of that statute will almost *always* be predicated on a violent or drug

trafficking crime that arises out of the same facts, transaction and occurrence.

So, every prosecution for violation of § 924(c) where the predicate crime is

burglary involving controlled substances will involve use of a firearm that has a

nexus with the burglary.  Although use of a vehicle or any other dangerous

weapon would support a violation of § 2118(c)(1), it would not trigger the

application of § 924(c).  The use, possession, or carrying of a firearm in

connection with the burglary is a fact that will always be present when a

defendant is charged with violating § 924(c) by virtue of using a firearm in

connection with a violation of § 2118(c)(1).

The court's observation immediately above is just that:  an observation

about an obvious fact involving § 924(c) prosecutions.  The forest-for-the-trees

analysis plays no part in the court's overall conclusion that Mr. Graham has

failed to state a claim.  Rather, that conclusion is based on the discussion of

the statutes and caselaw preceding this observation.

The court concludes Mr. Graham's § 924(c)(1)(A) conviction is not called

into question by <u>Davis</u>.  It follows, then, that Mr. Graham's § 2255 motion

should be denied.

### CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge

respectfully recommends granting the government's motion to dismiss [Docket

No. 10] and dismissing Mr. Graham's § 2255 motion without holding an evidentiary hearing.

### NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED December 11, 2020.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge